**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MICHAEL A. JONES, JR.,

        Plaintiff(s),                      **DECISION AND ORDER**
     v.                                                09-CV-6556

THE TOWN OF CANANDAIGUA, MARION
CASSIE, DAVID DAWSON, OKSANA FULLER,
individually, and in their capacity
as the majority membership of the
Town Board, CAROL MAUE and THOMAS REH,
individually, and in their respective
official capacities as legal counsel
to the Town of Canandaigua, and other
known or unknown members of the Town
of Canandaigua,

        Defendant(s).

---

**Preliminary Statement**

     This action stems from plaintiff Michael A. Jones, Jr., Esq.'s (hereinafter "Jones") brief term as Planning Board Attorney for the Town of Canandaigua from February 2008 through December 2008. In his Complaint, Jones has alleged seven causes of action, only two of which assert independent federal jurisdiction. All of the remaining causes of action are grounded in New York State law and allege claims for defamation, intentional infliction of emotional distress, negligent hiring, training, supervision and retention, and tortious interference with business relations. See Complaint (Docket # 1).

     Currently pending before the Court is defendants Carol Maue and Thomas Reh's motion for judgment on the pleadings or for partial summary judgment (Docket # 18), defendants Town of Canandaigua, Marion Cassie, David Dawson and Oksana Fuller's motion for judgment

on the pleadings (Docket # 20), and plaintiff's cross-motion for attorney's fees (Docket # 26) and cross-motion for discovery (Docket # 38). On August 6, 2010, the Court held a hearing and heard arguments on the defendants' motions for judgment on the pleadings (Dockets ## 18, 20) and plaintiff's cross-motion for attorney's fees (Docket # 26). The Court reserved its Decision and ordered the parties to submit supplemental briefs on various issues. On October 7, 2010, the parties filed their supplemental briefs and plaintiff filed his cross-motion for discovery. (Dockets ## 38, 39, 40). On November 23, 2010, the Court held a hearing and heard arguments on the issues addressed in the parties' supplemental briefs as well as plaintiff's cross-motion.

### Relevant Facts

The following facts are set forth in the Complaint. The facts are taken as true, and inferences are drawn in plaintiff's favor, as must be done on a motion to dismiss. Although the Complaint alleges seven causes of action, the Court will limit itself to facts relevant to a determination of only the federal claims.

Pursuant to a Canandaigua Town Planning Board Resolution, plaintiff Jones was employed as Planning Board Attorney for the defendant Town of Canandaigua from February 5, 2008 through December 31, 2008. According to plaintiff, the Planning Board agreed to pay for his legal services at the rate of $200 per hour. However, "for

all matter for which the Town of Canandaigua is unable to collect fee reimbursements," Jones agreed to a "discounted rate" of $135 per hour for legal services. Jones thereafter submitted itemized billing statements to the Town of Canandaigua which fully disclosed the dual billing rates depending on whether his legal services were subject to reimbursement by the applicant appearing before the Planning Board. The defendants voted on and approved each of plaintiff's billing submissions until August 2008 when a dispute over plaintiff's billing practices arose.

The dispute centered on the propriety of "the dual rate component" of Jones's billing practices. Jones alleges that defendant Maue, who served as the attorney for the Canandaigua Town Board, improperly questioned the financial billing arrangements between the Planning Board and Jones. Specifically, in August 2008, Maue wrote a memorandum to the Town Board alleging that Jones's dual billing rates are "highly indicative of an impermissible intention to 'generate revenue' for the attorney for the Planning Board rather than a 'reasonable fee.'" Complaint (Docket # 1) at ¶ 43. Jones alleges that Maue's motivation for accusing him of "fraud and self dealing" was a dispute that had been percolating between Maue's client (the Town Board) and Jones's client (the Planning Board) with respect to aspects of a proposed residential community project to be built near Canandaigua Lake. See RSM West Lake Rd. LLC v. Town of Canandaigua Zoning Bd. of Appeals, 865 N.Y.S.2d 172 (4th Dept. 2008).

According to Jones, the Town Board engaged in a concerted effort "to harass and intimidate the Planning Board from proceeding with its legal duty to review the Project." Complaint (Docket # 1) at ¶ 35. Jones alleges that the defendants were particularly upset when the Chair of the Planning Board requested an Ethics Opinion from the Ontario Board of Ethics ("BOE") as to whether members of the Planning Board who had an interest in the project should participate in Planning Board decisions relevant to the project. Jones claims that with Maue's assistance, the defendants voted to appoint attorney (and defendant) Thomas Reh "to 'investigate' the Planning Board Chair's referral of the Project's consideration to the BOE and Mr. Jones' legal advice to the Planning Board." Id. at ¶ 38. According to Jones, Reh's investigation resulted in a public Report to the Town Board which accused Jones of violating New York State Disciplinary Rule 5-109 and suggested that Jones's conduct could properly be referred for investigation by the Attorney Grievance Committee. Id. at ¶ 44.

Jones alleges that "[b]oth the Maue Memo and the Reh Report are replete with defamatory and inflammatory remarks regarding Mr. Jones in his role as attorney for the Planning Board; Maue's and Reh's statements against Mr. Jones were intended to discredit, impugn, and denigrate Mr. Jones' character." Id. at ¶ 42. Jones further alleges that on September 16, 2008, at the urging of the defendants, the Town Board voted to refer the allegations in the Reh Report to

the Ontario County District Attorney for investigation.  In addition, the Town Board voted to request the resignation of Mr. Jones for allegedly "'overbilling' at the $200 per hour rate." Id. at ¶ 46.  According to Jones, the Town Board repeatedly tried to "convince the Planning Board to terminate Plaintiff's services, and to coerce Plaintiff's resignation, all while cloaking their underlying personal agendas." Id. at ¶ 56.

The dispute among Jones, Maue, Reh, the Town's Planning Board and Town Board generated substantial publicity in the local press. Media reports repeated the allegations that Jones's billing practices were improper and that his conduct had been referred to the District Attorney "for the purpose of pursuing possible criminal charges against Mr. Jones." Id. at ¶¶ 47-49.  Jones alleges that it became public knowledge that the defendants "filed grievances against Mr. Jones with the Attorney Grievance Committee for the Seventh Judicial District." Id. at ¶ 54.  Jones claims that as a result of the defendants' actions he "has had clients call his office asking for an explanation as to what they were" seeing in media accounts. Id. at ¶ 68.  Several of Jones's clients "asked that their wills be transferred to other attorneys" and other attorneys were "rejecting referrals to Mr. Jones" based on defamatory media reports. Id.  As a result of his "public defamation," Jones has "sought counseling and therapy for the stress he has endured." Id. at ¶ 71.

Despite the public uproar and the stress caused by the actions of the defendants, Jones refused to resign and completed his contractual term as the Planning Board's attorney. Jones alleges, however, that the defendants "engaged upon a mission to prevent the Planning Board from re-appointing Mr. Jones by adopting a local law requiring the Town Board's approval of the Planning Board's selection of a legal advisor." Id. at ¶ 60. Based on the new local law, Jones did not apply for reappointment when his term expired. Id.

Jones's Federal Causes of Action: In his Fifth Cause of Action, Jones alleges that the defendants violated his right to substantive due process. In his Seventh Cause of Action, Jones alleges that the defendants violated his civil rights under 42 U.S.C. § 1983. The general substance of both federal causes of action appear to be the same: (1) the defendants deprived him of his property interest in continued service as the attorney for the Town Planning Board, and (2) the defamatory statements of the defendants and the resulting stigma has created a "significant roadblock" to Jones's ability to attract new clients, maintain existing clients and continue to engage in the practice of law.

## Discussion

The defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In

deciding a Rule 12(c) motion, the Court applies "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party" (see Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)) unless the allegations are "supported by mere conclusory statements" (see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, (2009)).  On a motion to dismiss pursuant to Rule 12, the issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)(citation omitted).  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Facial plausibility" is achieved when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  While the court must accept the factual allegations of Jones's Complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  To defeat the motion, a plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible."

Twombly, 550 U.S. at 570.[1]

<u>Jones's Property Interest</u>: Jones alleges that the defendants violated his rights to substantive due process by depriving him of a property interest in continued service as Planning Board Attorney. <u>See</u> Complaint (Docket # 1) at ¶ 107. Specifically, plaintiff asserts that the defendants made various defamatory statements during Town Board meetings and to the local media which led to plaintiff's determination that "it would have been futile for [him] to apply for re-appointment as legal advisor for the Planning Board." <u>Id.</u> at ¶ 60.

Whether characterized as a procedural or a substantive due process claim, to succeed Jones must demonstrate the deprivation of a constitutionally protected interest. In other words, Jones must prove infringement of a tangible property or liberty interest to which he has a "legitimate claim of entitlement." <u>Board of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 576 (1972); <u>see</u> <u>also</u> <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 130 (2d Cir. 1998) (applying same requirement to substantive due process analysis).

---

[1] "[W]here a court does not consider matters outside the pleadings in deciding a motion to dismiss-regardless of whether such matters may have been submitted by the parties for the court's consideration-the court need not convert the motion into one for summary judgment under Rule 56." <u>Boyd v. J.E. Robert Co.</u>, No. 05-CV-2455 (KAM)(RER), 2011 WL 477547, at *5 (E.D.N.Y. Feb. 2, 2011). The Court has "complete discretion" in determining whether to accept and consider matters outside the pleadings. <u>Travelers Indem. Co. v. Joseph Davis Inc.</u>, No. 05-CV-870A, 2006 WL 3827430, at *3 (W.D.N.Y. Dec. 28, 2006).

Viewing the allegations in the Complaint as true, I nevertheless conclude that the "property interest" Jones asserts in the Planning Board Attorney position does not rise to the level of a right entitled to due process protection.

"Although the Constitution protects property interests, it does not create them." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 629 (2d Cir. 1996). In order to properly plead a protected property interest, Jones "must have more than an abstract need or desire for it" and "must have more than a unilateral expectation of it," rather he must allege sufficient facts to establish that he has a "constitutionally-protected 'legitimate claim of entitlement'" to the position or public benefit which he sought. Id. Jones's Complaint points to no statute, rule, local law, ordinance or contractual provision which in any way obligates the Town to renew his appointment at the end of a contractual term. In fact, Jones alleges that after his contract as attorney to the Planning Board ended, he did not apply for reappointment because he considered it "futile." See Complaint (Docket # 1) at ¶ 60. Jones's brief in response to the instant motion cites no case or authority finding or even suggesting the existence of a property right to renewal of a fixed term legal employment contract.[2]

---

[2] Plaintiff's Complaint does not allege he was fired from the position of attorney for the Planning Board. Rather Jones alleges that he was "requested to resign and effectively removed" from the

9

The Supreme Court's decision in <u>Board of Regents of State Colls. v. Roth</u>, 408 U.S. 564 (1972) essentially rejects the property interest argument advanced here by Jones. In <u>Roth</u>, the plaintiff was hired as a political science professor at a state college "for a fixed term of one academic year." <u>Id.</u> at 566. Upon completion of his term Roth was "notified that he would not be rehired for the next academic year." <u>Id.</u> Roth sued his employer alleging that the decision not to rehire him for the next year infringed his due process rights. The Court rejected Roth's argument that he had a cognizable property interest in being rehired after his employment contract had expired. The Court held that unlike a tenured professor, the terms of Roth's one-year appointment

> secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim

---

position. The defendants assert that "plaintiff served out his term as counsel to the Planning Board and then announced that he would not seek reappointment to that position." <u>See</u> Defendant Town's Memorandum of Law (Docket # 22) at p. 7. During the motion hearing, Jones's counsel agreed that Jones was <u>not</u> terminated from his position as counsel to the Planning Board. <u>See</u> Transcript of Proceedings of August 6, 2010 (Docket # 36) at pp. 49-50. However, even if Jones was terminated from the position at attorney for the Planning Board, his due process claim still fails as a matter of law. "The Second Circuit has held that employees at will have no protectable property interest in their continued employment unless contractual or statutory provisions guarantee continued at-will employment absent 'sufficient cause' for discharge or the employee can prove a <u>de facto</u> system of tenure." <u>Pierce v. Netzel</u>, No. 98-CV-532A(F), 2004 WL 1055959, at *9 (W.D.N.Y. May 10, 2004) (citing <u>Abramson v. Pataki</u>, 278 F.3d 93, 99 (2d Cir. 2002)); <u>see</u> <u>S & D Maint. Co. v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988)("In the employment context, a property interest arises only where the [government] is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*.").

10

>of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

Id. at 578. Here, Jones did not have "a legitimate claim of entitlement" to reappointment for an additional term as attorney for the Planning Board. Accordingly, Jones did not have a property interest sufficient to require due process protections.

It is significant that in his response to the defendants' motion to dismiss his due process claims, Jones does not claim that he had a property interest in his position as attorney for the Planning Board. Instead, Jones's only argument made in opposition to dismissing the due process claims is that the "[d]efendants fail to recognize that Plaintiff performed work under contract for which he has yet to be paid." See Plaintiff's Memorandum in Opposition annexed to Docket # 26 at p. 10. Again, accepting that allegation as true, Jones still has no viable due process claim. Put simply, Jones has no protected property interest in the legal fees he is allegedly owed under his former contract with the Town because "[t]he right to payment on such a contract does not rise to the level of a constitutionally protected property interest." Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 31 (2d Cir. 1994).

Jones's Liberty Interest: "Generally, defamation is an issue of state, not of federal constitutional, law." Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010). However, "the 'liberty' interest protected by the due process clause includes in certain circumstances the right to contest at a hearing public, stigmatizing governmental accusations that impose a substantial disability." O'Neil v. City of Auburn, 23 F.3d 685, 691 (2d Cir. 1994). This type of due process claim is called a "stigma plus" claim.[3]

"To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)(internal quotation marks and citations omitted). See Vega v. Lantz, 596 F.3d 77, 81 ("[A]n action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest.")(internal quotation marks and citations omitted).

For purposes of this Decision the Court will assume that the defendants' statements about Jones as alleged in the Complaint were

---

[3] Although Jones characterizes his "stigma plus" claim as one of substantive due process, it is actually a claim grounded upon an alleged violation of procedural due process. See Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006)("stigma plus is a species within the phylum of procedural due process").

false and damaged Jones's good name, reputation, honor or integrity. DiBlasio v. Novello, Nos. 09-3310-cv(L), 09-3448-cv (XAP), 10-0111-cv (XAP), 2011 WL 802534, at *2 (2d Cir. Mar. 9, 2011)("We have previously defined stigma as 'public opprobrium' and damage to one's reputation, which can result from governmental statements questioning or attacking one's good name, reputation, honor, or integrity.")(internal quotation marks and citation omitted). But allegations that the actions of the defendants damaged Jones's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." Paul v. Davis, 424 U.S. 693, 701 (1976). There still must be the "plus" prong of the stigma plus claim alleged—that is, factual allegations that are sufficient to trigger a constitutionally protected liberty interest.

The clearest factual predicate for stigma plus claims in the employment context arise when the defendant's defamatory statements result in the plaintiff's dismissal from government employment. Patterson v. City of Utica, 370 F.2d 322, 330 (2d Cir. 2004)("[A] cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment."). Here, however, Jones concedes he was not terminated from his government position. Thus, the sufficiency of his "plus prong" allegations hinges on whether the defamatory statements impaired his <u>future</u> employment prospects. However, as defendants

correctly point out, defamatory statements that do no more than diminish Jones's prospects for future employment are insufficient to state a cognizable property interest. Allegations that "defamation by public officials had resulted in a poor reputation that made it less likely that he would be hired in the future" are simply "not enough to support the finding of a liberty interest." <u>Valmonte v. Bane</u>, 18 F.3d 992, 1001 (2d Cir. 1994). Jones must demonstrate that the defamatory statements by government officials not only defamed him but created "a tangible burden on [his] employment prospects." <u>Id.</u>

This is no small hurdle. In his Complaint Jones alleges that "[a]s a result of Defendants' publication of knowingly false stigmatizing material, Mr. Jones' interest in his good name and reputation has been impaired and Defendants' actions have placed a significant roadblock in Mr. Jones' continued ability to practice his profession as a municipal attorney." <u>See</u> Complaint (Docket # 1) at ¶ 132. Jones's inclusion of the "significant roadblock" phrase in his Complaint is no coincidence. In <u>Donato v. Plainview-Old Bethpage Cent. Sch. Dist.</u>, 96 F.3d 623 (2d Cir. 1996), the Second Circuit reinstated dismissed stigma plus claims involving an assistant principal who was discharged from her employment after receiving strongly negative performance evaluations. In reversing the district judge, the court held that stigma plus "allegations will support a right to a name-clearing hearing only when they

14

denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to <u>effectively put a significant roadblock in that employee's continued ability to practice his or her profession</u>."  <u>Id.</u> at 630-31. (emphasis added).

The issue on a motion to dismiss is not whether Jones will prevail, but whether his claim achieves "facial plausibility." <u>Iqbal</u>, 129 S. Ct. at 1949.  I find this to be a very close question based on the facts alleged by Jones.  "[C]onclusory allegations that a plaintiff's reputation has been damaged, that a plaintiff's career has been destroyed or that a substantial roadblock has been placed in a plaintiff's ability to continue its profession are insufficient to withstand a motion to dismiss."  <u>Tadco Constr. Corp. v. Dormitory Auth. of State of N.Y.</u>, 700 F. Supp. 2d 253, 265 (E.D.N.Y. 2010). Here, Jones alleges that as a result of the defamatory statements he (1) lost business from municipal clients, (2) lost business from his general practice, (3) has been unable to procure municipal law work, and (4) has been unable to procure municipal law positions. <u>See</u> Complaint (Docket # 1) at ¶ 114.  Assuming the truth of those allegations, even that might not be enough to elevate his claims from a state defamation action to a constitutional wrong entitled to due process protection.  <u>See</u> <u>Schultz v. Vill. of Bellport</u>, No. 08-CV-0930 (JFB)(ETB), 2010 WL 3924751, at *7 (E.D.N.Y. Sept. 30, 2010)(A due process claim predicated on a liberty interest in

engaging in an occupation "will succeed only where a person is blocked from participating in a particular field."); Rodriguez v. Margotta, 71 F. Supp. 2d 289, 297 (S.D.N.Y. 1999)("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.")

Despite the evidentiary hurdle, the Court has determined that it is proper to let Jones's stigma plus claim proceed subject to review after a short period of discovery.  A brief and focused period of discovery solely to ascertain whether the allegedly defamatory statements damaged Jones's "professional reputation to such a degree as to virtually foreclose [his] ability to continue working in [his] chosen field" will assist the Court in determining whether Jones's stigma plus claim can survive a motion for summary judgment. Donato, 96 F.3d at 626. See Gardner v. City of Waukegan, No. 98 C 5372, 1999 WL 410009, at *4 (N.D. Ill. June 4, 1999)("The deprivation of occupational liberty rises to the level of a constitutionally protected right when a plaintiff is completely prevented from pursuing an occupation or is completely driven out of business.").  Such evidence would seem to be uniquely obtainable from Jones himself and not involve far ranging discovery or numerous depositions.

Once this limited discovery is complete, a factual record may properly be presented to the Court on a motion for summary judgment

whereupon the Court can determine whether there are sufficient facts to support a stigma plus theory of recovery. If the Court determines that issues of fact exist as to whether the allegedly defamatory statements prevented Jones from pursuing his occupation, full discovery on Jones's stigma plus claims will go forward. If, however, defendants can show that Jones will be unable to introduce facts upon which a reasonable jury could find a sufficient deprivation of "occupational liberty," then Jones's remaining federal claim will be dismissed and Jones's state law claims must be pursued in state court. Given the foregoing, it would be inefficient for this Court to delve into the merits of Jones's state law claims at this time. See Nnebe v. Daus, No. 09-4305-cv, 2011 WL 1086569, at *13 (2d Cir. Mar. 25, 2011)("Once the district court has determined how it will treat the federal claim, it may then examine how it will treat the state claims.").

Before moving on, the Court will also suggest to counsel two other issues which should be litigated in an early summary judgment motion. First is the issue of qualified immunity, which the defendants have raised in their Answers as an affirmative defense. As stated earlier, the doctrine of stigma plus is clearest when considered in the context of deprivation of a tangible interest such as termination of government employment. But in other contexts, the contours of stigma plus are far less certain. Even now, many years after the Supreme Court's decision in Paul, "it is not entirely

17

clear what the 'plus' is." Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir. 1989). Indeed, in Neu, the Second Circuit analyzed whether defamation that impairs a person's ability to pursue his chosen profession, "even if it does not occur in the course of dismissal from government employment," is a clearly established right for purposes of qualified immunity. Id. at 666-68. Here, Jones was not dismissed from his government employment and the Court suggests that it would be appropriate at this early stage to determine whether the occupational liberty deprivation he asserts was a clearly established constitutional right. Cowan *ex rel*. Estate of Cooper v. Breen, 352 F.3d 756, 760 (2d Cir. 2003)("[Q]ualified immunity issue[s] should be resolved early in the proceedings.")(citation omitted). Second is the issue of what process was due Jones and specifically whether the availability of an Article 78 proceeding defeats Jones's stigma plus claim. See Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011)("An Article 78 hearing provides the requisite post-deprivation process-even if [plaintiff] failed to pursue it."). This too would seem an issue that could be resolved early in the litigation and could be determinative of whether Jones's case remains in federal court or litigated in state court.

Finally, in the Seventh Cause of Action plaintiff fleetingly alleges: "The custom or policy of the Town of Canandaigua caused Mr. Jones to be subjected to a denial of his constitutional rights."

18

Complaint (Docket # 1) at ¶ 134.  To the extent Jones is alleging a "policy or custom" claim against the Town of Canandaigua pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), his allegations are insufficient.  To establish a municipality's liability based on the actions of its employees, Jones must be able to demonstrate (1) that he suffered a constitutional injury and (2) that the injury resulted from a policy or custom of the Town of Canandaigua. Monell, 436 U.S. at 694.  Although Jones refers to "the custom or policy," he has not identified "the" custom or policy he is referring to or alleged facts sufficient to find a plausible inference that the Town had any formal or informal "custom or policy" of divesting persons of their constitutional rights.

## Conclusion

For the reasons set forth herein, the defendants' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure are **granted in part and denied in part**. All federal claims other than Jones's "stigma plus" due process claim are dismissed.  The stigma plus claim shall not be dismissed but subject to the limited discovery as set forth in this Decision and Order.  The defendants' motions to dismiss Jones's pendant state law claims are **denied without prejudice** to renew once the Court determines whether this case will remain in federal court. Plaintiff's cross-motion for attorney's fees (Docket # 26) is **denied**

and his motion for discovery (Docket # 38) is **granted in part** consistent with this Decision and Order. The Court directs that no later than April 15, 2011 counsel shall submit to the Court a proposed scheduling Order setting forth deadlines for the discovery and motion practice contemplated by this Decision and Order.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 31, 2011
Rochester, New York